```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT
                                        :
PATRICIA GOMEZ,                         :
                                        :
     Plaintiff,                         :
                                        :
V.                                      :  CASE NO. 3:04-CV-2177 (RNC)
                                        :
                                        :
LAIDLAW TRANSIT, INC.,                  :
                                        :
     Defendant.                         :
```

RULING AND ORDER

Plaintiff brings this action against her former employer alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60.  She also alleges a common law claim of negligent misrepresentation.  Defendant has moved for summary judgment on all the claims.  The CFEPA claim survives the motion for summary judgment but the other claims do not.  Accordingly, the motion is granted in part and denied in part.

I.   Facts

Viewing the summary judgment record in a manner most favorable to the plaintiff, a reasonable jury could find the following facts.  In 1996, plaintiff was promoted to branch manager at defendant's New London branch.  (Def.'s L. R. 56(a)1 Statement ¶ 2)  Her performance in this position was acceptable.

1

(Doc. #38 Ex. 1 at 165)  Until 2002, she performed her duties from a vehicle and an office in Groton.  (Doc. #39 Ex. 4 at 13)  In the spring of 2002, she was given an office at the New London High School.  (Def.'s L. R. 56(a)1 Statement ¶ 3)  The office was dirty, unheated, unventilated and moldy.  (Def.'s L. R. 56(a)1 Statement ¶ 6)

Plaintiff had no apparent breathing problems at the time she was given the office at the High School, but she had been diagnosed with asthma and mold allergies as a young child. (Doc. #34 Ex. C at 88, Ex. D at 17)  After moving into the office, she developed headaches, urinary tract infections, breathing problems, pneumonia, bronchial infections, and rashes, and also lost weight.  (Def.'s L. R. 56(a)1 Statement ¶ 5)  In early December 2002, she visited an emergency room because of breathing problems.  (Doc. #39 Ex. 4 at 38-39)  On December 10, she was examined by an occupational health doctor, Dr. Deshpande, who concluded that her respiratory condition was caused by exposure to mold, mildew, fumes, and vapors at work.  (Doc. #38 Ex. 9)[1]  He advised her that she could return to work in a week if the office were cleaned and properly heated and ventilated.  (Doc. #39 Ex. 13 ¶ 9)  Plaintiff filed a complaint with the

---

[1] Defendant has moved in limine to preclude Dr. Deshpande from testifying at trial.  (See Doc. #27.)  It is unclear whether defendant intended to move to strike his testimony in connection with the present motion.  If so, I note that his testimony is not material to my ruling.

Occupational Safety and Health Administration on December 9. (See Doc. #38 Ex. 8)

On January 6, 2003, Dr. Deshpande cleared plaintiff to return to work. (Def.'s L. R. 56(a)1 Statement ¶ 8) At that time, plaintiff "was feeling really good." She had regained weight, was not using inhalers, and her headaches had stopped. (Doc. #34 Ex. D at 24) She returned to work on January 10. (Doc. #39 Ex. 4 at 191-92) Over the next ten days, her breathing problems and sinus infection returned, she had a seizure, and the right side of her face went numb. (Doc. #39 Ex. 4 at 47)

Following plaintiff's return to the office, her supervisor, Barbara Brigham, behaved differently toward her. Brigham stood over her while she worked, would not allow her to leave, criticized her work, and left her a large stack of papers to work on. (Doc. #39 Ex. 4 at 212) Brigham was also "snippy" and said she was "sick and tired" of plaintiff being sick. (Doc. #39 Ex. 4 at 214, 220) In late January 2003, Brigham delayed the payment of plaintiff's salary by over a week. (Doc. #39 Ex. 4 at 218)

Plaintiff stopped working on January 21, 2003. (Doc. #39 Ex. 4 at 49.) Another doctor, Dr. Radin, cleared her to work, but not in the office at the High School or anywhere else where she would be exposed to the same irritants. (Doc. #39 Ex. 4 at 50-51) Plaintiff asked defendant to relocate her to another office or to a trailer. (Doc. #39 Ex. 4 at 131-32, 197)

Defendant looked for alternative office sites within the High School.  (Doc. #38 Ex. 7 at 134-38.)  In April 2003, branch manager positions opened up in East Lyme and Waterford, but those positions were not offered to plaintiff.  (Doc. #38 Ex. 7 at 30, 36.)  Plaintiff applied for another opening in East Lyme in 2004 or 2005, but the position was not open when her application was received.  (Doc. #38 Ex. 3 at 221-23; Ex. 7 at 122)

Plaintiff never resigned, and defendant never terminated her employment.  (See Doc. #39 Ex. 4 at 188)  As of January 27, 2004, defendant still considered her an employee.  (Doc. #39 Ex. 2 ¶ 2)  In the months preceding that date, defendant was still considering whether it could find a new office for plaintiff at the High School.  (Doc. #38 Ex. 12 at 73)  Plaintiff has been employed full time as a manager for a pest extermination company since 2004.  (Def.'s L. R. 56(a)1 Statement ¶ 26)

At a deposition related to a workers' compensation claim in May 2003, plaintiff testified that she was "fully recovered from the problems" she suffered in the New London High School office. (Doc. #34 Ex. C at 117)  She testified that her breathing problems subsided about a week and a half after she left the office and finished a course of antibiotics.  (Doc. #34 Ex. C at 118)  On November 17, 2003, she testified that she felt "wonderful," explaining that she had not been on antibiotics or breathing treatments, had regained weight, had stopped having

4

headaches, and had not seen a doctor since leaving the office. (Doc. #34 Ex. D at 42.)  In February 2004, she stated, "I have not had any seizures, respiratory problems or been on any inhalers or antibiotics, and I have not been to the ER for these problems."  (Doc. #34 Ex. F ¶ 15)

On November 19, 2003, plaintiff was examined by Dr. Gerardi in connection with her application for workers' compensation benefits.  (Doc. #39 Ex. 3 at 6)  At that time, her respiratory status "was pretty good" and "[s]he was feeling well."  (Doc. #39 Ex. 3 at 16)  Dr. Garardi diagnosed plaintiff with bronchial asthma and allergies, which could trigger respiratory problems. (Doc. #39 Ex. 3 at 17)  He also concluded that she had a ten percent impairment of both lungs and should have been using inhalers.  (Doc. #39 Ex. 3 at 22-23)  He recommended follow-up care with an internist or pulmonologist.  (Doc. #39 Ex. 3 at 23)

On March 30, 2004, Dr. Santilli, an allergist, examined plaintiff.  (Doc. #39 Ex. 11 ¶ 2)  He found her symptoms consistent with allergic rhinitis, chronic sinusitis, asthma and mold exposure.  (Doc. #39 Ex. 11 ¶ 4)  He also found her to be allergic to a wide variety of foods and irritants.  (Doc. #39 Ex. 11 ¶ 4) Subsequent evaluations revealed that her condition was not improving with medication.  (Doc. #39 Ex. 11 ¶ 6)  In an affidavit, he characterized plaintiff as "sensitive to the slightest exposures, including mold, which could delay her

recovery and even trigger more serious symptoms." (Doc. #39 Ex. 11 ¶ 13)

Plaintiff filed charges of disability discrimination and retaliation with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission on November 12, 2003. She filed this action on December 27, 2004.

II.  Discussion

Summary judgment may be granted only when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that no genuine issue of material fact exists, and all reasonable inferences must be drawn in favor of the nonmoving party. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004). Once the moving party has demonstrated the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and point to evidence in the record showing a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

   A.   ADA Discrimination

Plaintiff contends that defendant discriminated against her because of her asthma by failing to make reasonable accommodations, such as moving her to another office. Failure to accommodate a disability constitutes discrimination under the

ADA.  See 42 U.S.C. § 12112(b)(5)(A); Stone v. City of Mount Vernon, 118 F.3d 92, 96-97 (2d Cir. 1997).  Defendant contends that plaintiff cannot prevail on this claim because the evidence before the court fails to prove she was disabled within the meaning of the ADA.

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual."  42 U.S.C. § 12102(2)(A). Application of this definition comprises three inquiries: first, whether the plaintiff has a physical or mental impairment; second, whether the life activity identified by the plaintiff is a major life activity; and, third, whether the impairment substantially limits the major life activity.  Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998).  It is undisputed that plaintiff suffers from asthma, which is a physical impairment affecting the respiratory system.  See Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 723 (2d Cir. 1994). Plaintiff claims that her asthma limits her ability to breathe, which is a major life activity.  See Muller v. Costello, 187 F.3d 298, 312 (2d Cir. 1999) (citing 29 C.F.R. § 1630.2(i)).  The only disputed issue is whether plaintiff's asthma substantially limits her ability to breathe.

EEOC regulations, which are accorded deference in ADA cases in this Circuit, see id. at 312 & n.5, define "substantially

limits" to mean in relevant part "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j)(1)(ii).  The regulations also encourage consideration of the following factors: (i) the nature and severity of the impairment, (ii) its duration or expected duration, and (iii) its permanent or long-term impact or expected permanent or long-term impact.  § 1630.2(j)(2).  Whether an impairment substantially limits a major life activity depends on the facts of the particular case.  See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002).

Applying these standards in Heilweil, the Court of Appeals affirmed summary judgment for the employer because the asthmatic plaintiff's ability to breathe was limited only in certain environments.  The plaintiff in that case had been able to maintain her health, despite her asthma, until she was transferred to her employer's blood bank.  32 F.3d at 719.  After the transfer, she experienced increased asthmatic symptoms, including headaches, chest tightness and respiratory infections.  Id. at 720.  Once she stopped working in the blood bank, her health "rapidly improved."  Id.  Several months after leaving the blood bank, she said she felt "fine."  A year later, she

testified that her asthma did not preclude her from exercising. Id. at 723.  Given these facts, the Second Circuit rejected the plaintiff's contention that her asthma significantly limited her day-to-day breathing.  Under Heilweil, therefore, an employee who has trouble breathing in only one location – in plaintiff's case, the New London High School office – is not "substantially limited" in her ability to breathe.  See also Muller, 187 F.3d at 314 (plaintiff felt "pretty good" outside of work when using inhalers although he could have severe reactions to some environmental pollutants); Murphy v. Bd. of Educ., 273 F. Supp. 2d 292, 317-18 (W.D.N.Y. 2003) (plaintiff suffered asthma attacks in buildings with no fresh air source but could otherwise control his symptoms), aff'd, 106 F. App'x 746 (2d Cir. 2004), cert. denied, 544 U.S. 920 (2005); Nugent v. Rogosin Inst., 105 F. Supp. 2d 106, 114 (E.D.N.Y. 2000) ("While plaintiff's symptoms may have also occasionally been triggered by exposure to a smoke-filled room or a strong household cleanser, there is no evidence that Nugent's daily activities were significantly hindered due to her asthma."); Castro v. Local 1199, Nat'l Health & Human Servs. Employees Union, 964 F. Supp. 719, 725 (S.D.N.Y. 1997) (plaintiff's asthma only restricted her ability to go outside in extreme temperatures).

Plaintiff attempts to distinguish these cases on the ground that she now knows her condition to be more serious than she

previously thought and now suffers respiratory problems in various environments. She explains that medications do not completely control her asthma and that she is sensitive to various triggers, such as perfume and mold. (Doc. #39 Ex. 4 at 163-64.) She relies on the findings of Drs. Gerardi and Sinelli, discussed above.

Heilweil is instructive on this point as well. In that case, following the plaintiff's discharge from her employment, her "medical condition deteriorated to a point requiring surgical correction" and "she may have developed a condition known as bronchiectasis, a change in the lining of the lung that renders it more sensitive and susceptible to fluid infiltration and infection." 32 F.3d at 721. However, the Second Circuit found this evidence irrelevant to the question whether the plaintiff was disabled at the time of the discharge. Id. at 724-25.

Similarly, in this case, plaintiff's current symptoms and diagnosis are not relevant to whether she was disabled at the time of the alleged discrimination.[2] On the record before the court, the defendant had no reason to believe that plaintiff was disabled at the pertinent time. Accordingly, she cannot prevail

---

[2] For this reason, plaintiff's reliance on Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242 (10th Cir. 2004), is unavailing. Even if plaintiff's symptoms rise to the level of the Albert plaintiff's, which I need not decide, her current symptoms are irrelevant to the question before the court.

10

on her ADA discrimination claim.[3]

B.   CFEPA Discrimination

The CFEPA prohibits discrimination on the basis of "physical disability."[4]  Conn. Gen. Stat. § 46a-60(a).  Defendant contends that plaintiff was not physically disabled within the meaning of this statute.  Conn. Gen. Stat. § 46a-51(15) defines "physically disabled" as "any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or

---

[3] Plaintiff's reliance on Capobianco v. City of N.Y., 422 F.3d 47 (2d Cir. 2005), is unavailing.  In Capobianco, the plaintiff was diagnosed with congenital stationary night blindness in 1999 and was discharged that same year.  Id. at 51-52.  The district court disregarded plaintiff's sworn assertions that he could not drive at night in 1999 because it found those assertions inconsistent with his testimony that he drove at night in 1990.  Id. at 58 n.6.  The Second Circuit found a plausible explanation for the inconsistency and concluded that the sworn assertions should not have been disregarded.  Id.  This court is not disregarding plaintiff's testimony about her current symptoms or diagnosis as inconsistent with her previous testimony; rather, her current symptoms and after-the-fact reassessment of her condition are not relevant to whether she was disabled at the time of the alleged discrimination.

[4] Because defendant does not challenge the "discrimination" element of this claim, I will assume that the CFEPA imposes a duty to accommodate and that failure to accommodate constitutes discrimination.  See Rieger v. Orlor, Inc., 427 F. Supp. 2d 99, 101 n.2 (D. Conn. 2006) (lower Connecticut courts have inferred such a duty from the CFEPA, but the Connecticut Supreme Court has not spoken on the issue); see also Adriani v. Comm'n on Human Rights & Opportunities, 220 Conn. 307, 320 n.12 (1991) ("We do not address whether provisions of General Statutes § 46a-60(a)(1) forbidding an employer from discriminating on the basis of a physical handicap are coextensive with the provisions of the federal statute, especially the 'reasonable accommodation' duty under that statute.").

from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device." This definition is significantly broader than that of the ADA because it does not require that the chronic impairment substantially limit a major life activity. See Beason v. United Techs. Corp., 337 F.3d 271, 277-78 (2d Cir. 2003); see also Shaw v. Greenwich Anesthesiology Assocs., P.C., 137 F. Supp. 2d 48, 65 (D. Conn. 2001).

For plaintiff to be protected by the CFEPA, her asthma must have been a chronic impairment. The statute does not define "chronic," but courts have defined it as "marked by long duration or frequent recurrence" or "always present or encountered." Curry v. Allan S. Goodman, Inc., No. CV020817767S, 2004 WL 3048590, at *4 (Conn. Super. Ct. Nov. 18, 2004), rev'd on other grounds, 97 Conn. App. 147 (2006). With reference to diseases, the term "chronic" has been defined to mean "of long duration, or characterized by slowly progressive symptoms; deepseated or obstinate, or threatening a long continuance; distinguished from acute." Shaw, 137 F. Supp. 2d at 65 (quoting Gilman Bros. v. Conn. Comm'n on Human Rights & Opportunities, No. CV950536075, 1997 WL 275578, at *4 (Conn. Super. Ct. May 13, 1997)). Plaintiff has produced evidence suggesting that her asthma was marked by long duration. It is undisputed that she has had asthma since childhood, even though it was not substantially

limiting her ability to breathe, and that she disclosed this condition to her employer. (<u>See</u> Doc. #39 Ex. 6)  She exhibited severe symptoms of this condition during her tenure at the New London High School office and continues to suffer from asthma today.  A reasonable jury could find from this evidence that plaintiff's asthma is "chronic."[5]

Because a jury could find that plaintiff was disabled under the CFEPA, I now turn to defendant's argument that this claim is barred by the statute of limitations.  A plaintiff must file a charge under the CFEPA within 180 days of the alleged discrimination.  Conn. Gen. Stat. § 46a-82(e).  Plaintiff filed her CHRO charge on November 12, 2003; therefore, any claims arising before May 16, 2003, including the claim that defendant failed to transfer plaintiff to the open branch manager positions in April 2003, are barred by the CFEPA's statute of limitations.  Plaintiff has produced evidence showing that defendant considered her an employee as recently as January 2004 and that it was considering accommodations several months before that date.  This

---

[5] Under the CFEPA, plaintiff need not show that her chronic asthma substantially restricted her ability to breathe.  For this reason, I am not persuaded by defendant's argument that I must consider the availability of corrective measures.  The Supreme Court has instructed courts to consider corrective measures in evaluating the "substantially limits" element of the ADA definition, which does not appear in the CFEPA definition.  <u>See</u> <u>Sutton</u>, 527 U.S. at 482-83.  <u>But see</u> <u>Shaw</u>, 137 F. Supp. 2d at 65 n.22 (considering corrective measures to determine whether the impairment was "chronic" under the CFEPA).

evidence raises a question of fact as to whether defendant was obliged to accommodate plaintiff's disability after May 16, 2003. Accordingly, summary judgment cannot be granted on the CFEPA discrimination claim.

C. ADA Retaliation

Retaliation claims under the ADA are analyzed pursuant to the framework used in Title VII cases. Lovejoy-Wilson v. Noco Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001). A retaliation claim requires a showing that (1) the plaintiff engaged in protected activity, (2) the employer knew of this activity, (3) the employer took adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action. Id. Defendant only contests the third prong of this test.[6]

In a recent Title VII, the Supreme Court explained that for purposes of a retaliation claim, an adverse action need not be an action that affects the terms and conditions of employment, such

---

[6] The court's finding that plaintiff was not disabled under the ADA does not preclude a finding that she engaged in protected activity. "A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (internal quotation marks omitted) (alteration in original). Because defendant does not contest this element, I presume that plaintiff had a good faith basis for believing that she was entitled to reasonable accommodation under the ADA.

as hiring, firing, change in benefits, or reassignment. Burlington N. & Santa Fe Ry. Co. v. White, No. 05-259, 2006 WL 1698953, at *7 (U.S. June 22, 2006).  Rather, an action is "adverse" for this purpose if "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at *10 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  Petty slights and minor annoyances do not satisfy this standard.  Id.  Though this standard is an objective one, the plaintiff's particular circumstances may inform the materiality inquiry.  See id. at *11.  Applying these standards, the Court held that assignment to more arduous and less prestigious job duties and a 37-day suspension without pay could reasonably be found to be materially adverse.  Id. at *12-13.

     Because the retaliation provisions of the ADA and Title VII contain similar language and have been interpreted uniformly, the standard adopted by the Court in the White case applies here. In support of her retaliation claim, plaintiff states that Brigham stood over her while she worked and would not let her leave, criticized her work, left her a stack of papers to work on, told plaintiff she was sick and tired of her being sick, and delayed payment of plaintiff's salary by more than a week.  In addition, she points to defendant's failure to transfer her to

15

open branch manager positions.

These alleged actions are not materially adverse under the <u>White</u> standard. Plaintiff has not shown that Brigham's criticizing her work, standing over her, not letting her leave, or leaving her a stack of papers, or her comment about being sick and tired of plaintiff's being sick, were anything more than minor annoyances. Similarly, plaintiff has offered no evidence to show that the delay in payment was materially adverse.[7] Finally, because defendant was under no duty to accommodate plaintiff under the ADA, and because plaintiff has not shown that she was entitled to transfer without a timely application, defendant's failure to transfer her was not materially adverse. Accordingly, plaintiff has failed to establish an adverse retaliatory action, an essential element of her ADA retaliation claim.

    D. <u>CFEPA Retaliation</u>

CFEPA retaliation claims are analyzed in the same manner as ADA retaliation claims. <u>Worster v. Carlson Wagon Lit Travel, Inc.</u>, 353 F. Supp. 2d 257, 270 (D. Conn. 2005), <u>aff'd</u>, 169 F. App'x 602 (2006). For the reasons just stated, plaintiff's

---

[7] She states in her memorandum that this had a serious impact on her because she was a single parent, she has presented no evidence to that effect. <u>Cf. id.</u> at *13 (holding a 37-day suspension without pay to be materially adverse because the suspension was indefinite and the lack of income caused plaintiff to be depressed).

16

retaliation claim is insufficient as a matter of law.  Moreover, any claim based on defendant's failure to transfer her to open branch manager positions in April 2003 is barred by the 180-day statute of limitations, discussed above, and she cannot maintain a failure-to-hire or failure-to-transfer claim arising from her application in 2004 or 2005 because she has not controverted defendant's evidence that her application was untimely.  See Petrosino v. Bell Atl., 385 F.3d 210, 227 (2d Cir. 2004) (imposing an application requirement).  To the extent plaintiff claims that defendant's ongoing failure to accommodate her after May 16, 2003 constituted retaliation, this claim is also insufficient as a matter of law.  Requesting accommodation inevitably carries the possibility that the employer will not honor the request.  If the prospect that an employer might not honor the request would deter a reasonable employee from even making the request, reasonable employees would not request accommodation.  For this reason, a failure to accommodate cannot constitute retaliation for an employee's request for accommodation.  Accordingly, plaintiff's claim for retaliation under the CFEPA fails as well.

   E.   Negligent Misrepresentation

   Under the doctrine of negligent misrepresentation, a party "who, in the course of [its] business, profession or employment . . . [negligently] supplies false information for the guidance of

others in their business transactions" is liable for pecuniary losses caused by justifiable reliance on the misinformation. Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 575 (1995) (quoting Restatement (Second) of Torts § 552 (1977)). Plaintiff claims that defendant negligently misrepresented that her office was safe, thereby inducing her to return to work in January 2003 and causing her further injury.  Any claim for personal injury caused by defendant's negligent misrepresentation is barred by the exclusivity provision of Connecticut's Workers' Compensation Act, Conn. Gen. Stat. § 31-284(a).  See Claps v. Moliterno Stone Sales, Inc., 819 F. Supp. 141, 152 (D. Conn. 1993).

    Plaintiff asserts that she is seeking to recover not for personal injury but for "pecuniary losses" caused by the negligent misrepresentation.  However, she has failed to identify any pecuniary losses caused by the misrepresentation.  Her unpaid leave of absence and reduction in salary were caused by defendant's failure to accommodate her respiratory problems, not by the negligent misrepresentation; plaintiff would have suffered those same losses even had defendant told her that the office was unsafe.  Because plaintiff's only plausible injury from any negligent misrepresentation was personal injury, this claim is barred by the Workers' Compensation Act.

III. Conclusion

For the foregoing reasons, the motion for summary judgment [Doc. #32] is hereby granted in part and denied in part. Plaintiff's ADA claims (Counts One-Three), her CFEPA retaliation claim (Count Five), and her negligent misrepresentation claim (Count Seven) are hereby dismissed.

So ordered.

Dated at Hartford, Connecticut this 29th day of September 2006.

/s/
Robert N. Chatigny
United States District Judge